UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN PAUL DOTHARD,

    Plaintiff,

v.                                                Case No. 1:09-cv-912
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on March 20, 1957 (AR 50).[1] Plaintiff has provided inconsistent information on his educational background. At the administrative hearing, plaintiff testified that the highest level of education he completed was the 12th grade (AR 454). However, plaintiff previously reported that he completed one year of college and had special job training in welding (AR 71). Plaintiff applied for SSI on November 16, 2005, alleging a disability onset date of November 28, 1968 (when he was apparently 11 years old) (AR 74). Plaintiff identified his disabling conditions as anxiety, depression, agoraphobia, high blood pressure and post traumatic stress disorder (PTSD) (AR 65, 77).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff has an extremely limited work record. He had previous employment in telephone sales and as a welder in 1979 and 1980, with his most recent employment as a hotel janitor in 1990 (AR 66, 454).[2] The work record is explained by plaintiff's testimony that he was incarcerated in prison from 1991 to 2004 (AR 453). Plaintiff was not incarcerated when he filed his application on November 16, 2005 (AR 453). However, plaintiff testified that he was incarcerated in the Eaton County Jail and the Ingham County Jail from sometime after November 16, 2005 to November 2007 (AR 453). In this regard, a court ordered substance abuse evaluation reported that plaintiff "came to jail 11/8/2006" (AR 344). Plaintiff was returned to state prison in November 2007 (AR 453),[3] where he remains today.[4]

On August 26, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 19-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[2] The record reflects that plaintiff earned $1,600.63 in 1990 and $52.46 in 1991 (AR 49). Plaintiff had no earnings for the years 1992 through 2006 (AR 49).

[3] Plaintiff's periods of incarceration have an impact on his application for SSI. If plaintiff succeeded in obtaining an award of SSI benefits, he would receive no monthly benefits for the period in which he was "confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense." 42 U.S.C. § 402(x)(1)(A)(i). At the administrative hearing, plaintiff's counsel acknowledged this statutory bar to benefits, stating "I think that Mr. Dothard understands if he's found disabled, he can't receive money while he's a prisoner but we would be requesting some monies for the time period before he was placed in prison" (AR 451). The court notes that an award of SSI would be barred during the time that plaintiff was in jail between November 16, 2005 and November 2007.

[4] Plaintiff testified he was sentenced to a 20-year term in prison, which he began in 2007 (AR 453, 462).

2

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

3

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his SSI application date of November 16, 2005 (AR 21). At step two, the ALJ found that plaintiff suffered from severe impairments of: polysubstance abuse; anxiety disorder; and hypertension (AR 21). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 23). The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant is limited to simple 1, 2 or 3 step instructions. He is unable to respond appropriately to co-workers and usual work situations and requires only occasional interpersonal interaction with co-workers and only brief superficial contact with the public.

(AR 24). The ALJ further found that plaintiff had no past relevant work (AR 25).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 25). The ALJ identified 31,010 jobs in the regional economy that plaintiff could perform at the medium exertional level: night janitor (23,410 jobs); night stock clerk (1,365 jobs); machine tender (1,010 jobs); and farm laborer (5,225 jobs) (AR 26). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act since November 16, 2005, the date plaintiff's application was filed (AR 26).

5

## III. ANALYSIS

Plaintiff was represented by counsel before the administrative agency. However, he filed this appeal *pro se*. Plaintiff submitted a lengthy brief with his complaint, a short brief in response to the court's order directing the filing of briefs, and a response brief (docket nos. 1, 17 and 29). From these filings, the court has identified five issues:

> **A. Plaintiff's mental impairment is due to a traumatic childhood. The ALJ's finding that plaintiff's mental impairment is the result of drug and alcohol use is not supported by substantial evidence.**

Plaintiff contends that his mental impairment was caused by a traumatic childhood, commencing on November 27, 1968, when plaintiff witnessed his father's death. Plaintiff contends that the ALJ inappropriately attributed drug use and alcohol use as the cause of his mental disabilities, pointing out as "absurd" the ALJ's finding that he started using alcohol in 1963 (at age 5) and illegal drugs since 1973. Plaintiff further stated that he has been incarcerated since age 17 (approximately 32 years) and could not abuse illegal drugs while incarcerated.

Plaintiff's argument is meritless. The ALJ's decision does not include any such findings. Rather, the ALJ noted statements made by plaintiff, during a court-ordered substance abuse evaluation on April 27, 2007, that he used the following substances in the past 30 days: alcohol, 12 days; heroin, 30 days; opiates/analgesics, 30 days; and cocaine, 7 days (AR 22, 345). With respect to plaintiff's history of substance abuse, the ALJ did nothing more than repeat plaintiff's statements that he admitted to using the following substances on a regular basis: alcohol, 37 years; heroin, 35 years; opiates/analgesics, 20 years; and cocaine, 28 years (AR 22, 346). Plaintiff also reported during the evaluation that his panic attacks began when he was 12 years old

(AR 22, 344). Based upon this evaluation, the clinicians, Stacey M. Manley, MSW, and Alan B. Platt, ACSW, offered the following diagnoses: opiate dependence - continual; cocaine dependence - continual; alcohol abuse - continual; and a generalized anxiety disorder (AR 351).

Based on this evidence, the ALJ found that plaintiff's severe alcohol and drug abuse were material:

> He testified [on August 13, 2008] that he has not had alcohol or used drugs for the past 2 years, yet during the court ordered substance abuse evaluation that took place on April 27, 2007 (less than 2 years ago), the claimant admitted to using the following substances during the past 30 days: alcohol, 12 days; heroin, 30 days; opiates/analgesics, 30 days; and cocaine, 7 days. The undersigned finds that the claimant's drugs and alcohol [sic] is material as he has had consistent abuse without any remission except possibly when incarcerated.

(AR 24).

The ALJ considered whether plaintiff met the requirements of mental impairments appearing in Listing 12.06 (anxiety related disorders) and 12.09 (substance addiction disorders) (AR 23). In evaluating these disorders, the ALJ determined that plaintiff had moderate restrictions in his activities of daily living; moderate difficulties in social functioning; moderate difficulties with respect to concentration, persistence or pace; and one or two episodes of decompensation (AR 23). The ALJ was unable to rely on the findings as set forth in a Psychiatric Review Technique forms (PRTF) prepared by the agency psychologists. The first PRTF, dated July 30, 2004, contained no evaluation due to insufficient evidence (AR 91-104). The second PRTF, dated February 21, 2006, contained no evaluation due to insufficient evidence, specifically plaintiff's failure to cooperate (AR 126-41).

The evaluation process for determining whether a claimant is disabled due to substance abuse in SSI cases is set forth in 20 C.F.R. § 416.935 ("How we will determine whether

your drug addiction or alcoholism is a contributing factor material to the determination of disability"). Section 416.935(a) provides in pertinent part that, "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." *See* 42 U.S.C. § 423(d)(2)(C) ("[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"). Here, the ALJ found that plaintiff was not disabled, even assuming the effects of his drug and alcohol abuse (AR 23-26). Because the ALJ did not find plaintiff disabled, it was unnecessary for him to determine whether the drug and alcohol abuse was a contributing factor. The ALJ's findings regarding plaintiff's mental impairments are supported by substantial evidence. Accordingly, plaintiff's claim of error should be denied.

> **B.  The ALJ erred in his credibility determination as to plaintiff's mental and physical impairments, and then failed to make credibility findings with sufficient "specificity to permit intelligible plenary review of the record"?**

Plaintiff testified: that he last held a job in 1990; that from November 2005 through November 2007, while not incarcerated, he mowed lawns and took out trash for others; that he has been in prison almost 30 years of his life; and that he is currently incarcerated for a sentence of up to 20 years (AR 23). When asked why he could not perform full-time work, plaintiff stated that: he thinks people hate him; he avoids people by leaving late for work and sitting on the toilet at work; he cannot seem to work with other people; when other people look at him he gets hyper and has chest pains; he gets into a lot of arguments with his supervisors; he has high blood pressure; has

8

daily chest pains which, on a 10-point scale of ascending pain, reach seven or eight; thinks he has Hepatitis B and/or C; is tired; has headaches two to three times a week, some lasting three or four days; sometimes he cannot get off of his bunk and needs a nurse or medic to help him; has been hospitalized 10 to 12 times for panic attacks; and pain in his right knee (AR 454-59).

After considering the evidence of record, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent with the RFC assessment. The ALJ noted that plaintiff's hearing testimony "that he has not had alcohol or used drugs for the past 2 years [i.e., since approximately August 18, 2006]" contradicted plaintiff's statements during the April 27, 2007 substance abuse evaluation that he used alcohol, heroin, opiates/analgesics and cocaine within the past 30 days (AR 24, 460). The ALJ observed that while plaintiff has a longstanding history of hypertension, "there are records showing periods of noncompliance" (AR 21 and 25). The ALJ noted that when plaintiff underwent a heart catheterization for episodes of chest pain in 2006, he was found to have normal, age-appropriate epicardial coronary arteries, and was told to stop taking cocaine and heroin (AR 21-22). In addition, the ALJ noted that plaintiff has not gotten regular treatment for an anxiety disorder (AR 25). Finally, after observing that plaintiff has been incarcerated for about 30 years of his life and has not held a job since 1990, the ALJ concluded that plaintiff's lack of work history "may be due to his incarcerations and not necessarily from his alleged impairments" (AR 25).

It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir.

1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).

The ALJ has set forth a number of sufficient reasons for finding that plaintiff was not credible in claiming that he suffered from disabling impairments. Plaintiff has failed to present a compelling reason to disturb the ALJ's credibility determination. Accordingly, plaintiff's claim of error should be denied.

### C. The ALJ made incorrect factual statements.

Plaintiff contends that the ALJ's decision includes several incorrect factual statements (in his words):

> ALJ English has spoken about several things that just is not true:
>
> A) I have never been charged with burglary or Breaking and Entering . . . .
>
> B) Claimant does not have a valid driver's license. Not since 1990.
>
> C) Claimant has been complaining about audio and hallucinations for sometime now. There was insufficient evidence only because claimant did not show up at his appointment. This was on November 1, 2006 (pg. 126). The Michigan Department of Corrections has a mental health file on claimant.
>
> D) The claimant does have osteoarthritis in his right knee. He has been treated since 2008 with Ultram

> and Naproxyn. The Michigan Department of Corrections has diagnosed my osteoarthritis.
>
> E) This claimant has not used alcohol or drugs all through his juvenile and adult years. Certainly there is alcohol and drugs within the prison system but to purchase them a person would have to have money. And in most cases drugs are the exception not the rule.

Plaintiff's Response at p. 8.

Again, plaintiff's contentions are without merit. The ALJ did not make statements as referenced in plaintiff's paragraphs A, B and C. With respect to paragraph D, The ALJ found that plaintiff's knee pain and chest pain were non-severe impairments because they were easily treated and did not cause significant limitations in his ability to perform basic work activities (AR 21). In addition, plaintiff's treatment for osteoarthritis by the Michigan Department of Corrections (MDOC) in 2008 is not relevant, because his SSI claim is limited to his condition before his incarceration in November 2007 (AR 453). Finally, with respect to paragraph E, the ALJ's recitation of plaintiff's substance abuse was based upon plaintiff's own statements made during the substance abuse evaluation in 2007 (AR 22, 346). Plaintiff's claim that the ALJ made erroneous factual determinations should be denied.

### D. The ALJ relied on an improper hypothetical question posed to the vocational expert (VE).

At step five of the sequential evaluation, the ALJ found that plaintiff could perform 31,010 jobs at the medium exertional level. The ALJ made this determination based upon the VE's testimony in response to hypothetical questions. Plaintiff contends that the ALJ relied on inaccurate hypotheticals posed to the VE.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnoses. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

The ALJ's first hypothetical question posed to the VE included restrictions similar to those expressed in the RFC determination, except that the hypothetical question was more restrictive by limiting the hypothetical individual to work at the medium exertional level (as opposed to all exertional levels) (AR 474). Even with this more restrictive limitation, the VE found that such a person could perform approximately 31,010 jobs in the regional economy (AR 474). Plaintiff contends that the ALJ should have relied on the limitations contained in a second hypothetical, which assumed that all of plaintiff's complaints were "fully credible and his testimony is supported

12

by the medical evidence" (AR 474). In response to this second hypothetical, the VE testified that such an individual would not be able to perform any jobs (AR 474-75). Specifically, the VE testified that plaintiff's alleged non-exertional impairments (i.e., daily chest pains, daily panic attacks, need to avoid people, need to fight or argue with other individuals, and debilitating headaches occurring up to three times per week and lasting up to four days each) would preclude employment (AR 475). The ALJ found that plaintiff was not credible and determined that his RFC was greater than the non-exertional limitations as set forth in the second hypothetical question. The ALJ properly relied on limitations which he found credible, s*ee Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231, and therefore his reliance on the VE's testimony based upon the first hypothetical question was proper.

**E.     New evidence**

Finally, plaintiff has submitted new evidence of his medical condition as reflected in MDOC medical records from October 2008, January 2009, June 2009 and March 2010. *See* MDOC medical records (docket nos. 1-2, 1-3, 1-4, 1-5, 1-6, 18-2 and 29-1). All of these medical records were generated after the ALJ issued his decision on August 26, 2008. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Rather, the court remands because new evidence

has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have changed the prior proceeding.

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute:

> The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g)(emphasis added).

Plaintiff's request for a sentence-six remand should be denied because these medical records are not material. All of the new evidence reflects plaintiff's condition as it existed during his incarceration at the MDOC, long after the relevant time period (i.e., that period between November 16, 2005 and November 2007 during which he was not incarcerated). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). Even if this new evidence proved that plaintiff was disabled as of October 2008, plaintiff would not be entitled to receive benefits under 42 U.S.C. § 402(x)(1)(A)(i), because he "is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense." Plaintiff's request for a sentence-six remand to review this new evidence should be denied.

## IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: December 20, 2010                      /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).